UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM B. CHAMPLIN,

Plaintiff,

-v-

MUSIC SALES CORP. *d/b/a* WISE MUSIC, *and*
WISE MUSIC GROUP LTD.,

Defendants.

21 Civ. 7688 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff William B. Champlin, a songwriter and performer, brings claims of copyright infringement under section 203 of the Copyright Act of 1976 (the "Act"), 17 U.S.C. § 203, and for conversion under New York law against defendants Music Sales Corp. ("Wise Music") and Wise Music Group ("WMG") (together, "defendants"). Champlin claims that defendants wrongfully failed to relinquish to him their ownership interest in "After the Love Has Gone" (the "Song"), a song that Champlin co-authored with non-parties David Foster and Jay Graydon in 1978. He claims that defendants have continued to wrongfully collect royalties for his share in the Song's interest. He claims that defendants were required to relinquish their ownership interests in the Song because, on two occasions, defendants' rights in the Song were terminated by valid termination notices pursuant to section 203—one executed by Champlin, and another executed by Foster and Graydon.

Defendants dispute the legal adequacy of both termination notices. They move now to dismiss Champlin's amended complaint under Rule 12(b)(6) for failure to state a claim. They

also move to dismiss Champlin's state-law conversion claim as preempted. For the reasons that follow, the Court grants in part and denies in part the motion to dismiss.

## I.    Background

### A.    Factual Background[1]

#### 1.    The Parties and Other Relevant Entities

Plaintiff Champlin, a California resident, is a Grammy Award-winning songwriter and performer. AC ¶ 7. He owns non-party Nightworm Music ("Nightworm"), a music publishing company. *Id.* ¶ 28.

Defendant Wise Music, a music publisher, is a New York corporation with its principal place of business in New York City. *Id.* ¶ 8. Defendant WMG, Wise Music's parent company, is a limited company headquartered in London, United Kingdom, with United States offices in New York City. *Id.* ¶ 9.

Non-parties Bobette Music ("Bobette"), Noted for the Record ("Noted"), New Music Inc. ("New Music"), Charleville Music ("Charleville"), Acme Music ("Acme"), EMI Blackwood Music ("EMI"), and Sony/ATV Music Publishing ("Sony") are music publishing companies. Each, as discussed below, had some ownership of the Song between 1978 and 2016. *Id.* ¶¶ 16, 18, 20.

---

[1] This factual account draws from the Amended Complaint. Dkt. 16 ("AC"). *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The AC offers several legal statements and conclusions. *See* AC ¶¶ 11–14, 21, 24. The Court has disregarded them. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**1.      1978–2016: The Song, the 1978 Grant, and Later Transfers of Its Ownership Interests**

In 1978, Champlin, Foster, and Graydon co-wrote the song, "After the Love Has Gone" (the "Song").[2] *Id.* ¶ 15.  The Song's copyright is registered with the U.S. Copyright Office. *Id.* As joint authors under the Copyright Act, each initially held a one-third interest in the Song. *Id.*

In 1978, to aid the Song's release by the band Earth, Wind and Fire, the authors granted their interests to Bobette, Charleville, and Acme (the "1978 Grant"). *Id.* ¶ 16.

Important here, Champlin pleads that the grant of his one-third interest, which was to Bobette, was by him alone, and was independent of the contemporaneous grants by Foster and Graydon of their interests to Charleville and Acme.  And, he pleads, his interest in the Song thereafter has been transferred separate and apart from the interest traceable to his co-authors. *Id.*  Specifically, Champlin alleges that, pursuant to the 1978 Grant, Champlin transferred his full one-third interest to Bobette, which did not receive any interest in the Song from either Foster or Graydon. *Id.*  Champlin's interest later was subdivided and further transferred, such that, as of the date this suit was filed, Champlin's one-third interest in the Song was held as follows:  Wise Music held 20.67%; Noted held 7.49%; and New Music held another 5.17%. *Id.* ¶¶ 17–18.  And, Champlin alleges, the later owners of his interest (Noted, New Music, and Wise Music) never held any interest in the Song other than those traceable to Champlin's original interest. *Id.* ¶¶ 16–18.

---

[2] The Song has alternatively been referred to as "After the Love Is Gone." *See, e.g.*, Dkt. 20-5 at 1, 4 (termination notices, signed by Foster and Graydon, addressed to EMI and Sony, respectively, and identifying Song's title as "'After the Love Has Gone,' (aka, 'After the Love Is Gone')"); Dkt. 20-6 (Champlin's termination notice to Wise Music, New Music, and Noted; same).

As to Foster and Graydon's interests in the Song, these were transferred to Charleville and Acme in the 1978 Grant. *Id.* ¶ 16.[3] Sony, through EMI, later acquired a portion of Foster and Graydon's interest from Charleville and Acme. *Id.* ¶ 20. That interest amounted to 45% of the total interest in the Song. *Id.*

### 2. January 20, 2016: The Foster/Graydon Termination Notices

On January 20, 2016, Foster and Graydon timely served a notice of termination, signed by both, on Sony, and another such notice on EMI (the "Foster/Graydon Notices"). *Id.* ¶ 22; *see* Dkt. 20-5 at 1, 4 (attaching Foster/Graydon Notices to instant motion to dismiss). The Foster/Graydon Notices specified an effective date of the termination of January 22, 2018. AC ¶ 22. On February 17, 2016, the Foster/Graydon Notices were duly recorded with the Copyright Office. *Id.* Sony/EMI relinquished to Foster and Graydon their combined 45% interest in the Song. *Id.* ¶ 23.

### 3. August 8, 2016: The Champlin Termination Notice and Wise Music's Refusal to Relinquish Its Interest or Royalties to Champlin

On August 8, 2016, Champlin timely served on Wise Music, New Music, and Noted a notice of termination (the "Champlin Notice"), which he signed. It directed those entities to relinquish to him his original one-third interest, which he had granted to Bobette and thereafter had made its way to them. *Id.* ¶¶ 25–26; *see* Dkt. 20-6 (attaching Champlin Notice to instant motion to dismiss). The Champlin Notice specified August 15, 2022 as the effective date of the termination. AC ¶ 25. On August 8, 2016, the Champlin Notice was duly recorded with the Copyright Office. *Id.* New Music and Noted relinquished their ownership interests in the Song

---

[3] The AC never explicitly states whether Charleville and Acme each received the interest of one and only one of these two authors, or if Charleville and Acme each received some combination of Graydon and Foster's joint interest. This factual issue does not bear on the Court's analysis resolving the instant motion to dismiss.

to Champlin. *Id.* ¶ 27. And New Music sent a letter to Wise Music, stating that New Music's ownership interest in the Song had reverted to Champlin, and directing Wise Music henceforth to forward the royalties collected for New Music's 5.17% interest to Nightworm, Champlin's music company. *Id.* ¶ 28.

Wise Music, however, has refused to relinquish its interest in the Song to Champlin—despite "multiple written and oral communications with Champlin's counsel." *Id.* ¶ 30. Wise Music continues to license and collect royalties for both its 20.67% interest and the 5.17% interest relinquished by New Music. *Id.* ¶¶ 30–31.

### B. Procedural Background

On September 14, 2021, Champlin filed the original complaint. Dkt. 1. On November 23, 2021, he filed the AC. Dkt. 16. On November 30, 2021, the parties stipulated to a schedule for defendants to answer or otherwise respond to the AC. Dkt. 18. On December 13, 2021, defendants filed a motion to dismiss ("MTD"), and a memorandum of law, an affirmation, and exhibits in support, Dkt. 20. On February 14, 2022, Champlin filed a memorandum of law in opposition. Dkt. 24 ("Opp'n"). On March 7, 2022, defendants replied. Dkt. 28 ("Reply"). On May 6, 2022, defendants filed a supplemental letter alerting the Court to the decision in *Peretti v. Authentic Brands Grp., LLC*, No. 21-2174-cv, 2022 WL 1397767 (2d Cir. May 4, 2022), which defendants contend supports their MTD. Dkt. 29. On May 12, 2022, Champlin filed an opposing letter. Dkt. 30.

## II. Discussion

In moving to dismiss, defendants make separate arguments why the two termination notices—Champlin's and Foster and Graydon's—were ineffective as to Wise Music. The Champlin Notice was ineffective, they argue, because the three co-authors' interests were conveyed in 1978 in a single, indivisible grant, and that under 17 U.S.C. § 203, any subsequent

termination notice, to be effective, required the signatures of a majority of the three co-authors. Champlin counters that his grant of the ownership rights to Bobette in 1978 was distinct from his co-authors' grants to Foster and Graydon, such that he retained the authority unilaterally to terminate interests traceable to his original grant to Bobette. The motion to dismiss turns on this central dispute—and whether it can be resolved on the pleadings. The Foster/Graydon Notice, defendants argue, did not terminate Wise Music's interest in the Song because that notice was never served on them.

For the reasons below, the Court finds that, on the pleadings, the Champlin termination notice cannot be held ineffective as to Wise Music. The Court thus does not have occasion to resolve whether the Foster/Graydon Notices are plausibly pled to have been effective as to Wise Music.

The Court further finds that Champlin's conversion claim under state law is preempted by section 203 as to the 20.67% interest that Wise Music held at the date the Champlin Notice was served, but not as to the 5.17% interest that New Music relinquished to Champlin with respect to which Wise Music allegedly continued to thereafter collect royalties.

### A.    Applicable Legal Standards on a Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699

F.3d at 145. That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *DiFolco*, 622 F.3d at 111). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint," so long as there exists "no dispute . . . regarding the authenticity or accuracy of the document" and "there exist no material disputed issues of fact regarding the relevance of the document." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006), *DiFolco*, 622 F.3d at 111, *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)) (brackets in *AECOM*).

### B.    Champlin's Copyright Act Claims

#### 1.    The Legal Framework

"The authors of a joint work are co[-]owners of copyright in the work." 17 U.S.C. § 201(a). They are to "be treated generally as tenants in common, with each co[-]owner having an independent right to use or license the use of a work, subject to a duty of accounting to the other co[-]owners for any profits." *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007) (citation omitted) (alteration in original); *accord Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998).

Section 203 of the Act governs terminations of copyright grants "executed by the author on or after January 1, 1978." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 32 (2d Cir. 2015) (citing § 203(a)). "In the case of a grant executed by one author, termination of the grant may be effected by that author[.]" 17 U.S.C. § 203(a)(1). "In the case of a grant executed by two or

more authors of a joint work, termination of the grant may be effected by a majority of the authors who executed it[.]" *Id.* Authors "may effect termination 'at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant.'" *Baldwin*, 805 F.3d at 32 (quoting § 203(a)(3)).[4]

"Termination is not automatic." *Waite v. UMG Recordings, Inc.*, 450 F. Supp. 3d 430, 434 (S.D.N.Y. 2020). It must be effected by a termination notice which (1) "may be served between two and ten years before the termination date" and must (2) "state the effective date of the termination"; (3) "be recorded in the Copyright Office 'as a condition to its taking effect'"; and (4) "comply with various other formalities prescribed by regulation" under 37 C.F.R. § 201.10. *Baldwin*, 805 F.3d at 32 (quoting § 203(a)(4)). The regulatory prescriptions relevant here are (1) a clear and unambiguous identification of "[t]he name of each grantee whose rights are being terminated, or the grantee's successor in title, and each address at which service of the notice is being made," 37 C.F.R. § 201.10(b)(2)(ii), and (2) that "[t]he notice of termination shall be served upon each grantee whose rights are being terminated, or the grantee's successor in title . . .," *id.* § 201.10(d)(1).[5]

---

[4] "[I]f the grant covers the right of publication of the work, an alternative calculation method applies: termination may be effected in the five-year period beginning thirty-five years from the date of publication of the work under the grant or forty years from the date of execution of the grant, whichever term ends earlier." *Baldwin*, 805 F.3d at 32 (cleaned up) (quoting section 203(a)(3)).

[5] The remaining regulatory requirements, which the parties agree are satisfied by both the Champlin and the Foster/Graydon Notices, are:

- "[a] statement that the termination is made under section 203," 37 C.F.R. § 201.10(b)(2)(i);
- "[t]he date of execution of the grant being terminated and, if the grant covered the right of publication of a work, the date of publication of the work under the grant," *id.* § 201.10(b)(2)(iii);

To satisfy the service provisions under section 203, the server(s) of the termination notice(s) need only conduct "a reasonable investigation . . . as to the current ownership of the rights being terminated, and[,] based on such investigation," serve the grantee "[i]f there is no reason to believe that such rights have been transferred by the grantee," or serve the successor in title "[i]f there is reason to believe that such rights have been transferred" to that successor. *Id.* § 201.10(d)(2). Even where a notice is defective, "[h]armless errors in a notice," which are such errors that "do[] not materially affect the adequacy of the information required to serve the purposes of" section 203, "shall not render the notice invalid." *Id.* § 201.10(e)(1).

### 2.    The Champlin Notice

> *a.    Champlin plausibly pleads that he executed a separate grant of his ownership rights in the Song, terminable by him alone*

In moving to dismiss, defendants contend that the Champlin Notice is defective as to Wise Music because it was signed by Champlin only. On defendants' theory, the co-authors' 1978 Grant was single and indivisible, requiring the signatures of at least two of the three, on the principle that a termination notice of any co-author's interest must be signed "by a majority of the authors" as required by section 203(a)(1).[6] MTD at 14–16; *see also Scorpio Music S.A. v. Willis*, 11 Civ. 1557 (BTM) (RBB), 2012 WL 1598043, at *3 (C.D. Cal. May 7, 2012) (holding that § 203(a)(1)'s use of the term "grant" in the singular when referring to the termination of copyright interest by authors of a joint work implies that "if two or more joint authors join in a

---

- "the title of [each] work [terminated] and . . . , in the case of a joint work, the [names of the] authors who executed the grant being terminated; and, if possible and practicable, the original copyright registration number," *id.* § 201.10(b)(2)(iv);
- "[a] brief statement reasonably identifying the grant to which the notice of termination applies," *id.* § 201.10(b)(2)(v); and
- "[t]he effective date of termination," *id.* § 201.10(b)(2)(vi).

[6] Defendants do not argue that the Champlin Notice was otherwise deficient.

grant of their copyright interests, a majority of the authors is necessary to terminate that grant. If, however, a single joint author enters into a grant of his copyright interest, that author alone can terminate his grant").

Defendants' motion turns on a document not attached to the AC, but which they attach to their motion to dismiss. It is a Standard Songwriter Agreement ("SSA") that indicates it was signed and executed by the three co-authors signed in 1978 and grants their ownership rights in the Song to Bobette, Charleville, and Acme. *See* Dkt. 20-4. Defendants argue that the SSA is cognizable on the motion to dismiss because it is the "1978 Grant" referenced in the AC, or that, in the alternative, the AC "relies upon [the SSA's] terms and effect" so as to render it "integral" to the AC, *AECOM*, 19 F.4th at 106;*see* MTD at 8–9; Reply at 3–4; AC ¶¶ 16, 24, 26, 33 (defining and discussing the "1978 Grant"). The SSA, the defendants argue, treats the three co-authors as a unitary "Composer," the three recipient music companies as a unitary "Publisher," and lacks any statement or indication that Champlin was assigning his interest exclusively to Bobette or acting alone in effecting such an assignment. MTD at 14–15. This, according to defendants, defeats the central premise of Champlin's AC that Champlin executed a grant between himself and Bobette that can be treated as hermetically distinct. And, defendants argue, if Champlin did not separately grant his one-third interest to Bobette, he is powerless, acting alone, to terminate that interest as held by Bobette's assignees. Such a notice would require the signature at least one other co-author to reach the required majority. *Id.*

Champlin counters that the SSA is not cognizable on the motion to dismiss. That is because, Champlin states, the documents constituting the "1978 Grant" were not limited to the SSA. They also included an overarching Co-Administration Agreement ("CAA") between Bobette, Charleville, and Acme that incorporates the SSA and allocates the Song's ownership

interests among them.  Opp'n at 6–7; *see* Dkt. 23-1 (the CAA).  In other words, he states, while a document could be cognizable were it assuredly synonymous with the "1978 Grant," the AC does not define the "1978 Grant" as coterminous with the SSA, and that grant in fact was accomplished by the CAA and SSA operating in tandem.  Under the circumstances, there is an issue, unresolvable on the pleadings, as to the SSA's authenticity as the "1978 Grant."  *See AECOM*, 19 F.4th at 106.  Champlin accordingly moves this Court to either disregard the SSA or to consider the SSA and the CAA together as incorporated into the AC by reference.  Opp'n at 7–8 & n.1.

Champlin's methodological critique is persuasive.  The term "1978 Grant" is not self-defining.  And the AC does not define it, whether as limited to the SSA, comprised of the SSA and CAA, or otherwise.  Indeed, the AC does not cite the SSA (or the CAA) by name.  Although defendants may prove correct that the materials constituting and defining the 1978 Grant are limited to the SSA alone, that cannot be determined on the pleadings.  Accordingly, the Court has no choice at this stage but to disregard the SSA, as well as the CAA.  *See, e.g.*, *Bongiorno v. Baquet*, No. 20 Civ. 7288 (LJL), 2021 WL 4311169, at *12 (S.D.N.Y. Sept. 20, 2021) (finding exhibit non-cognizable on motion to dismiss where plaintiff's declaration created "an issue of fact as to whether [the exhibit] describes the precise terms of the 2009 note [plaintiff] purchased"); *Anwar v. Fairfield Greenwich Ltd.*, 831 F. Supp. 2d 787, 793 (S.D.N.Y. 2011) ("correlation alone" between an extrinsic document and one that is integral to the complaint "not enough to render [it] integral to the Complaint").  Discovery will be needed to determine the materials that constituted the 1978 Grant; whether, and in what manner, the SSA was among those materials; and whether the particular document offered by defendants is authentic.

In resolving the motion to dismiss, the Court is left with considering the AC and the limited materials cognizable on it—the Champlin Notice, and the Foster/Graydon Notices.[7] Based on that record, and "drawing all reasonable inferences in favor of the plaintiff," *Koch*, 699 F.3d at 145, Champlin plausibly pleads that he acted alone and executed a distinct grant of his distinct one-third interest to Bobette—and therefore had the legal capacity to singly terminate that grant and its derivatives. The AC pleads that Champlin assigned his original one-third interest in the Song exclusively to Wise Music's predecessor-in-interest Bobette, AC ¶¶ 16–17, that Bobette "did not receive any other ownership interest under the 1978 Grant," *id.* ¶ 16, and that Wise Music's 20.67% interest in the Song "represent[ed] a portion of Champlin's original one-third interest," *id.* ¶ 17; *see also id.* ¶ 25. The remainder of Champlin's interest ended up at Noted (7.49%) and New Music (5.17%). *Id.* ¶ 18. Indeed, defendants concede that, as pled in the AC, "Wise Music's rights derive solely from Bobette." MTD at 5 (citing AC ¶ 17). And the AC clearly pleads that the other interests in the Song, then and later, existed and were transferred independently of Champlin's original interest. *Cf. Scorpio Music*, 2012 WL 1598043, at *2, *5 (because author had executed a grant separate from co-authors, he alone could terminate it).

Because the AC pleads sufficient facts to support that Champlin executed a single and separate grant of his interest to Bobette, Champlin, as pled, had the capacity unilaterally to terminate this grant by serving termination notices compliant with section 203 on Bobette's

---

[7] The parties agree that these are cognizable, as is correct: The AC incorporates these by its clear and repeated references to them. *See* AC ¶¶ 22–24, 30 (defining and relying on Foster/Graydon Notices), 25–28, 30 (defining and relying on Champlin Notice).

successors-in-interest.  As pled, Champlin did so, by serving the Champlin Notice on Wise
Music, which was legally effective to terminate the Champlin Notice.[8]

> b.    *In the alternative, Champlin plausibly pleads that failure to
>       include Foster or Graydon as signatories was harmless error*

As an alternative argument against dismissal, Champlin contends that, even if the Court
finds that his ownership interest in the Song did not "travel an independent path," the Champlin
Notice's deficiency of not being signed by a majority of the Song's co-authors was harmless
error under 37 C.F.R. § 201.10(e).  Although a determination as to harmlessness cannot be made
without discovery, the AC indeed pleads sufficient facts to make such a claim plausible,
supplying a separate basis not to dismiss.

"The harmless error regulation is limited to 'harmless error *in a notice.*'"  *Yoakam v.
Warner Music Grp. Corp.*, 21 Civ. 1165 (SVW) (MAA), 2021 WL 3774225, at *4 (C.D. Cal.
July 12, 2021) (quoting § 201.10(e)) (emphasis in *Yoakam*).  "A termination notice with
incorrect information is valid if the errors were made in good faith and 'without any intention to
deceive, mislead or conceal relevant information' and if the errors are harmless and 'do not
materially affect the adequacy of the information required to serve the purposes of [section
203].'"  *Waite*, 450 F. Supp. 3d at 440 (quoting § 201.10(e)).  "[A]n error's 'materiality,' and
hence its 'harmlessness,' [is] to be viewed through the prism of the information needed to
adequately advance the purpose sought by the statutory termination provisions themselves."  *See*

---

[8] In arguing that Champlin did not execute a single and separate grant, defendants note the
principle that, "[w]hen a statute speaks with clarity to an issue, as in the case at hand," a court
ought not look beyond its text.  MTD at 16.  That principle is not of consequence here, as the
Court, as in *Scorpio*, has relied on the statutory text for its reading of section 203.  For the same
reason, the Second Circuit's recent decision in *Peretti*, in which it relied solely on section 203's
text in determining the meaning of the statutory term "executed," does not alter the analysis here.
*See* No. 21-2174-cv, 2022 WL 1397767, at *6–8 (2d Cir. May 4, 2022).

*Johansen v. Sony Music Ent. Inc.*, No. 19 Civ. 1094 (ER), 2020 WL 1529442, at *4 (S.D.N.Y.

Mar. 31, 2020) (quoting *Siegel v. Warner Bros. Ent. Inc.*, 690 F. Supp. 2d 1048, 1052 (C.D. Cal.

2009) ("*Siegel II*")) (alterations in *Johansen*).

Courts have identified two "competing objective[s]" underlying section 203.[9]  *Siegel II*,

690 F. Supp. 2d at 1055.  On the one hand, the Act seeks to "counterbalance the unequal

bargaining position of artists [seeking to reclaim their copyrights], resulting in part from the

'impossibility of determining a work's value until it has been exploited.'"  *Johansen*, 2020 WL

1529442, at *4 (quoting H.R. Rep. No. 94-1476, at 124 (1976)).  On the other, section 203

strives "for the existing assignee to receive reasonable notice of what rights of theirs are being

affected" in the artist's exercise of his or her termination right.  *Siegel II*, 690 F. Supp. 2d at

1055–56.[10]  The resulting inquiry into harmless error is, unsurprisingly, "fact-intensive," *Siegel

v. Warner Bros. Ent. Inc.*, 658 F. Supp. 2d 1036, 1093 (C.D. Cal. 2009) ("*Siegel I*"), *rev'd on

other grounds*, 504 F. App'x 586 (9th Cir. 2013) (summary order), and "case-specific," *Yoakam*,

2021 WL 3774225, at *7.  This inquiry is "broad," and not limited to mere "scrivener's error[s],"

---

[9] Inquiry into the statute's purpose is appropriate in considering the issue of harmless error. Section 203(a)(4)(B), in stating that a "[termination] notice shall comply, in form, content, and manner of service, with requirements that the Copyright Office shall prescribe by regulation," incorporates § 201.10(e)(2).  Section 201.10(e)(2), in turn, provides nonexclusive examples of a harmless error.  Because "[t]hese examples are not meant to be exclusive," *Mtume v. Sony Music Ent.*, 408 F. Supp. 3d 471, 476 (S.D.N.Y. 2019) (so concluding from a reading of § 201.10(e)(2)), courts have found it appropriate to look to section 203's purposes in gauging whether errors in unaddressed contexts are harmless.  *See, e.g., Waite*, 450 F. Supp. 3d at 440–41; *Siegel II*, 690 F. Supp. 2d at 1055–56; *Mtume*, 408 F. Supp. 3d at 476–77.

[10] The Copyright Office has described the inquiry framed by these objectives as "attempt[ing] to avoid the imposition of costly or burdensome [termination] requirements" while "giving the grantee and the public a reasonable opportunity to identify the affected grant and work from the information given in the notice."  Termination of Transfers and Licenses Covering Extended Renewal Term, 42 Fed. Reg. 45916, 45918 (Sept. 13, 1977).

but it "will [not] forgive every error in a notice or render section 203's notice requirements a nullity." *Yoakam*, 2021 WL 3774225, at *5; *see also Siegel I*, 658 F. Supp. 2d at 1072.

Assuming *arguendo* that the 1978 Grant was unitary such that the three co-authors together made the grant to Bobette, for the Champlin Notice to be legally compliant, it would have been necessary for Champlin *and* a co-author to sign. The failure to secure signatures from a majority of the grantors is clearly not a mere "scrivener's error." *Yoakam*, 2021 WL 3774225, at *5. *Compare, e.g., Johansen*, 2020 WL 1529442, at *5 (separating date of service and termination date by just short of two years in one termination notice harmless error where the concurrently served termination notices did not make this error), *with Siegel I*, 658 F. Supp. 2d at 1091–92 (omissions of particular works in long list of terminable works not a scrivener's error, but harmless because termination notice comported with section 203's underlying goals); *see also Waite*, 450 F. Supp. 3d at 440 (same for omission of grant's execution date); *Mtume*, 408 F. Supp. 3d at 476–77 (same for incorrect grant execution date). The issue then is whether, on the pleadings, finding the error in the Champlin Notice harmless would reasonably accommodate section 203's twin goals, and whether it is reasonable to infer that Champlin's error was made in good faith.

As to affording Wise Music "reasonable notice of what rights of theirs are being affected," *Siegel II*, 690 F. Supp. 2d at 1055–56, the Champlin Notice was not served in a vacuum. By the time Champlin served that termination notice on Wise Music on August 8, 2016, AC ¶ 25, the Foster/Graydon Notices—termination notices that listed the three original authors, the Song's title, and its Copyright Registration number—had been recorded with the Copyright Office, *id.* ¶ 22 (Foster/Graydon Notices recorded on February 17, 2016). Wise Music could thus have easily ascertained that the other co-authors also intended to terminate the 1978

Grant. The overall circumstances therefore plausibly are consistent with section 203's goal of giving Wise Music adequate notice as to all three authors' intent to terminate the 1978 Grant.

Finding harmless the omission of a second co-author's signature on an otherwise proper termination notice also plausibly furthers the goal of facilitating artists' ability to recapture their copyrights and "counterbalance the[ir] unequal bargaining position." *Johansen*, 2020 WL 1529442, at *4. Where the co-authors had publicly recorded their parallel intent to terminate, it is plausible to conclude that insisting on formalistic compliance with the majority-signatory rule would both be "costly [and] burdensome" to Champlin, 42 Fed. Reg. at 45,918, and deprive him of his opportunity to reclaim his copyright. As of today—May 2022—44 years have passed since the 1978 Grant. Barring relief, Champlin's 40-year window under section 203 would have expired. *See* 17 U.S.C. § 203(a)(3) (termination may be effected "at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant"). Finding the error in the Champlin Notice harmless thus plausibly advances the statute's second goal, too.

Finally, on the pleadings, it is plausible that Champlin's error occurred in good faith and "without any intention to deceive, mislead or conceal relevant information." 37 C.F.R. § 201.10(e). At the time Champlin served his termination notice, the Foster/Graydon Notices had been executed; and Sony and EMI and all other recipients had relinquished their 45% interest in the Song to Foster and Graydon. AC ¶ 23. And there was no reason to believe that, had Champlin sought to obtain the signature of a co-author on his notice, he would not have received it.

The Court accordingly holds that, if multiple co-authors' signatures were required for his termination notice, Champlin has pled facts making it plausible that this error was harmless. *See*

16

*Yoakam*, 2021 WL 3774225, at *7 ("Courts have adopted a permissive approach in resolving motions to dismiss turning on a plaintiff's invocation of the harmless error rule."); *Waite*, 450 F. Supp. 3d at 440 ("[V]iewing the facts in the light most favorable to plaintiffs, it is plausible that defendant can reasonably identify the grants and works plaintiffs seek to terminate."); *Mtume*, 408 F. Supp. 3d at 477 ("At this stage of the litigation and considering all facts in the light most favorable to [plaintiff], the Court finds it plausible that [defendant] was on notice as to which recordings were included in the Termination Notice."). This supplies an alternative basis to deny the motion to dismiss. However, a final resolution of this issue will require discovery, as the harmless error standard contemplates "the kind of case-specific determination that is poorly suited to resolution on a motion to dismiss." *Yoakam*, 2021 WL 3774225, at *7.[11]

### 3.   The Foster/Graydon Notices

Wise Music and WMG separately argue that the Foster/Graydon Notices were defective as to Wise Music, and thus, if considered, did not effect a reversion of its 20.67% interest in the Song to Champlin. That is so because the Foster/Graydon Notices were never served on the defendants, as required by 37 C.F.R. § 201.10(d)(1), and did not recite Wise Music's or WMG's names, as required by § 201.10(b)(2)(ii). *See* MTD at 12–16. Champlin opposes this argument on multiple grounds.

Having held that the AC adequately pleads that the Champlin Notice effected a valid termination of defendants' copyrights in the Song, the Court has no need to resolve this dispute. The parties are at liberty to renew their dispute as to this issue after discovery.

---

[11] For avoidance of doubt, the Court does not hold that, in the ordinary case, failure to secure signatures of the required majority of original co-authors would be harmless, as such would render 17 U.S.C. § 203(a)(1)'s majority requirement a "nullity." *Yoakam*, 2021 WL 3774225, at *5. The point is fairly argued here in light of the fact that the Foster/Graydon Notices had been executed and recorded at the time the Champlin Notice was served.

### C.    Champlin's Conversion Claims Under State Law

#### 1.    Exercise of Supplemental Jurisdiction Over State Law Claims

The Court clearly has supplemental jurisdiction over Champlin's state conversion claims. "Federal courts have supplemental jurisdiction over state-law claims 'that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Martin v. Sprint United Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2017 WL 5028621, at *2 (S.D.N.Y. Oct. 31, 2017) (citing 28 U.S.C. § 1367(a)); *see also Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011). "[T]he federal claim and state claim must stem from the same 'common nucleus of operative fact,' such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore*, 642 F.3d at 332 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Since the exercise of supplemental jurisdiction is discretionary, "a district court should balance the traditional 'values of judicial economy, convenience, fairness, and comity." *Mangum v. City of New York*, 15 Civ. 8810 (PAE), 2016 WL 4619104, at *9 (S.D.N.Y. Sept. 2, 2016) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). And "federal courts have often permitted a plaintiff presenting a federal; claim against one defendant to assert a related state claim against a different defendant." *Baylis v. Marriott Corp.*, 843 F.2d 658, 664 (2d Cir. 1988) (citations omitted).

Here, Champlin's copyright infringement claim under section 203 has survived the instant motion to dismiss. These claims are "sufficient to confer subject matter jurisdiction." *Montefiore*, 642 F.3d at 332 (citing *Gibbs*, 383 U.S. at 725), as they share a common nucleus of fact with his state-law conversion claim. As pled, Wise Music's conversion of Champlin's royalties arise from its refusal to honor the Champlin Notice—the same basis as his copyright claim. The federal and state claims in this action originate from a common nucleus of fact. In

these circumstances, judicial economy, convenience, and fairness all favor adjudicating the federal and state claims in a single proceeding.

### 2.      Applicable Legal Framework

Section 301 of the Copyright Law governs the preemption of state law.  17 U.S.C. § 301. A state law claim is preempted when "(1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act . . . , and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).  The first prong "is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." *Id.*  The second prong "is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *ML Genius Holdings LLC v. Google LLC*, No. 20-3113, 2022 WL 710744, at *3 (2d Cir. Mar. 10, 2022) (quoting *Briarpatch*, 373 F.3d at 305).  These exclusive rights, defined in section 106 of the Copyright Law, "consist of the rights 'to do and to authorize' the reproduction, distribution, performance, and display of a work, and the creation of derivative works based on a work." *In re Jackson*, 972 F.3d 25, 43 (2d Cir. 2020) (quoting 17 U.S.C. § 106).

### 3.      Champlin's State Conversion Claim Is Only Partially Preempted

Part of Champlin's conversion claim easily clears the preemption bar.  "The Song is a musical composition and as such a paradigmatic work protected by the Copyright Act." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 290 (S.D.N.Y. 2019) (citing 17 U.S.C. § 102(a)(2)).  Courts have frequently recognized such works to "fall[] within the ambit of one of the categories of copyrightable works." *Briarpatch*, 373 F.3d at 305; *see, e.g.*, *Yoakam*, 2021

19

WL 3774225, at *8; *Saint-Amour*, 388 F. Supp. 3d at 290; *We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*, 221 F. Supp. 3d 396, 410–11 (S.D.N.Y. 2016). Champlin's conversion claim covers Wise Music's alleged continued collection of royalties for the 20.67% interest it has held in the Song, and for the 5.17% interest that New Music initially held, but relinquished to Champlin after having received the Champlin Notice. AC ¶¶ 61–62. The first required prong is therefore satisfied.

As to the second prong, Champlin's claim survives, but requires pruning. "Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Dyer v. V.P. Recs. Retail Outlet, Inc.*, No. 05 Civ. 6583 (WHP), 2008 WL 2876494, at *6 (S.D.N.Y. July 24, 2008) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Texas*, 660 N.E.2d 1121, 1126 (N.Y. 1995)). "A good faith, reasonable belief that one has a legal right to possession of goods is not a defense to a claim of conversion." *O'Diah v. New York City*, No. 02 Civ. 274 (DLC), 2002 WL 1941179, at *19 (S.D.N.Y. Aug. 21, 2002). Where "the conversion claim comprised the same materials for which the plaintiff sought copyright protection," courts have found such a conversion claim preempted. *C.A. Inc. v. Rocket Software, Inc.*, 579 F. Supp. 2d 355, 367 (E.D.N.Y. 2008); *see also Membler.com LLC v. Barber*, No. 12 Civ. 4941 (JS) (GR), 2013 WL 5348546, at *13 (E.D.N.Y. Sept. 23, 2013); *Levine v. Landry*, 832 F. Supp. 2d 176, 187–88 (N.D.N.Y. 2011).

To the extent that Champlin "seeks relief for [d]efendants' distribution, publishing, and/or reproducing of" the 20.67% interest held by Wise Music, "there is no element beyond the infringement claim, and a claim for . . . conversion for the same acts is therefore preempted." *Barber*, 2013 WL 5348546, at *13 (citation omitted). However, as to the 5.17% interest that New Music held until relinquishing that interest to Champlin pursuant to the Champlin Notice,

the AC does not make any allegations sounding in copyright infringement. The conversion claim against Wise Music as to that 5.17% interest therefore is not preempted.

The Court accordingly grants defendants' motion to dismiss Champlin's conversion claim in part (as to the 20.67% interest in the Song held by Wise Music) but denies it in part (as to the 5.17% interest relinquished to Champlin by New Music, but for which Wise Music allegedly continues to collect royalties).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Wise Music and WMG's motion to dismiss. The Clerk of Court is respectfully directed to terminate the motion pending at docket 20.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: May 31, 2022
      New York, New York